UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES DRAIN,

                    Petitioner,

v.                                                    CASE NO. 10-11306
                                                      HONORABLE ARTHUR J. TARNOW

JEFFREY WOODS,

                    Respondent.

_____/

**OPINION AND ORDER CONDITIONALLY
GRANTING A WRIT OF HABEAS CORPUS**

Petitioner James Drain has filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The pleading challenges Petitioner's convictions for first-degree murder and two firearm offenses.  Petitioner raises several claims regarding the selection of his jury, the sufficiency of the evidence, the jury instructions, the testimony of a key prosecution witness, his trial attorney, the state court's denial of his motion for an evidentiary hearing, and the prosecutor's conduct.

The Court finds that the prosecuting attorney violated Petitioner's right to equal protection of the law by using peremptory challenges to excuse prospective jurors on the basis of race.  Alternatively, Petitioner's trial attorney was ineffective for failing to object to the prosecutor's discriminatory use of peremptory challenges and to the trial court's procedures during *voir dire*.  The habeas petition will be conditionally granted on those two grounds.

# I.  BACKGROUND

## A.  The Trial, Motion for New Trial, and Sentence

Petitioner was charged in Wayne County, Michigan with first-degree (premeditated) murder, felon in possession of a firearm, and possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm).  The charges arose from the fatal shooting of thirty-nine-year-old Angela Jones on Parker Street in Detroit on December 4, 2001.

There was no physical evidence linking Petitioner to the crime.  The primary evidence against him was the testimony of Collandria (Andria) Baker, who testified at Petitioner's jury trial that

> she saw the victim, Angela Jones[,] sitting in her car parked on Kerch[e]val Street in the City of Detroit at about 2:30 am.  Ms. Baker walked up, leaned into the car and asked Ms. Jones what she was doing there so late.  Ms. Jones responded that she could ask Ms. Baker the same thing.  Ms. Baker asked again and Ms. Jones told her to leave and mind her own business.  Ms. Baker persisted and Ms. Jones said she was going to meet "Moosey," the defendant's street name.  Ms. Baker testified that when she stood up she saw the defendant about 3 feet away from the victim's car.   The prosecutor asked Ms. Baker to point to something in the courtroom to establish the approximate distance that she saw the defendant.  Ms. Baker pointed to Investigator Fisher sitting at the prosecutor's table.   The court and the prosecutor verified that Investigator Fisher was about 15 feet from the witness.  Ms. Baker testified that she walked away from the victim's car to go to a drug house when she heard gunshots.  Ms. Baker testified that from the porch of the drug house down the street she saw sparks coming off the gun in the defendant's hand as he shot into the victim's car.  Ms. Baker testified that she ran away in fear and heard the defendant call out to her as she ran, "Baybay is that your black ass?"[1]  Ms. Baker testified that she did not go [to] the police because she was scared.  Ms. Baker testified that three weeks later she saw the defendant at a local store where she heard him say he wasn't afraid of anyone telling because he did not mind "laying a bitch down," which Baker thought was a reference to her.  Approximately a month after the murder Ms. Baker told a relative of the victim that she had been in the area when Ms. Baker was murdered.  The family member contacted the police who then asked Ms. Baker for information about what she might have seen.

> FN 1.  Ms. Baker testified that Baybay was her nick name.

*Drain v. Woods*, No. 10-11306

Op. and Order Granting Def.'s Mot. for Relief from J., at 2-3, No. 02-004012-01 (Wayne Cnty. Cir. Ct. Dec. 13, 2006) (unpublished) (footnote in original).

Ms. Baker also testified that Petitioner's girlfriend, Simone Griffin, made a threatening call to her after Baker testified at the preliminary examination. Ms. Griffin asked Ms. Baker why Baker said "all that stuff" about Petitioner at the court hearing. Griffin then warned Ms. Baker to "watch her back" because something was going to happen to her house.

There was additional evidence that Angela Jones' vehicle crashed into a parked car after the shooting. A police officer found Ms. Jones slumped over in her car. Willie Nabors testified that he heard the crash and observed a man in a silver car drive slowly by the crash site and say, "The old girl been shot."

The chief medical examiner for the county testified that the victim sustained three gunshot wounds: one on the top of the head and two on the left upper back. One of the gunshot wounds to the back was superficial, but the other one was fatal. The bullet passed through the main artery of the lung and dropped into the heart. The manner of death was homicide, but there was no evidence of close-range firing.

Petitioner did not testify, but he presented two witnesses. His first witness was his girlfriend, Simone Griffin, who denied threatening Ms. Baker. The second defense witness was Edward Blackburn, a private investigator, who testified that the police investigation was unusual because fingerprints collected at the scene were misplaced initially, but found at the last minute, In addition, there was no traffic accident report about the victim's car crashing into a parked car after the shooting.

3

*Drain v. Woods*, No. 10-11306

Petitioner's defense was that Ms. Baker's testimony was unreliable and unbelievable. Defense counsel argued to the jury that Petitioner was innocent, that Ms. Baker was a liar, and that it was physically impossible for Ms. Baker to see the shooting from the drug house where she went after speaking with Ms. Jones. Defense counsel asserted that the real perpetrator was the unidentified man who drove by the victim's car after the shooting and said, "The ol' girl is dead."

The trial court instructed the jury on second-degree murder as a lesser offense of first-degree murder. On June 18, 2002, the jury found Petitioner guilty of first-degree murder, felon in possession of a firearm, and felony firearm.

Before Petitioner was sentenced, he moved for a new trial on the ground that the prosecution's primary witness, Andria Baker, lied at trial. The trial court held an evidentiary hearing and denied Petitioner's motion for new trial after concluding that Petitioner did not meet his burden of proving that Ms. Baker was truly recanting her trial testimony. The court then sentenced Petitioner to time served (133 days) for the felon-in-possession conviction, to two years in prison for the felony firearm conviction, and to a consecutive term of life imprisonment without the possibility of parole for the murder conviction.

**B. The Direct Appeal, Motion for Relief from Judgment, and State Collateral Appeal**

In an appeal of right, Petitioner claimed through counsel that: (1) the prosecutor improperly excluded African Americans from the jury panel; (2) the evidence was insufficient to sustain his murder conviction; (3) the trial court's failure to instruct the jury on the order of deliberations deprived him of fair consideration of the lesser-included offense of second-degree

4

*Drain v. Woods*, No. 10-11306

murder, and trial counsel was ineffective for failing to object; and (4) the trial court abused its

discretion when denying his motion for a new trial.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished, *per curiam* opinion. *See People v. Drain*, No. 246014, 2004 WL 1459414 (Mich. Ct. App. June 29, 2004). In a subsequent application to the Michigan Supreme Court, Petitioner raised the same claims, and an additional claim that trial counsel was ineffective for failing to present an alibi witness and for advising him not to testify. The Michigan Supreme Court denied leave to appeal on February 28, 2005, because it was not persuaded to review the issues. *See People v. Drain*, 472 Mich. 867 (2005) (table).

In May 2006, Petitioner filed a motion for relief from judgment. He alleged that (1) trial and appellate counsel were ineffective, (2) the trial court erred when it instructed the jurors that they could infer an intent to kill from the use of a dangerous weapon, (3) the prosecutor committed misconduct, and (4) there was good cause for his failure to raise his claims on direct appeal and actual prejudice from the alleged irregularities. Petitioner's claim about trial counsel alleged that counsel was ineffective for failing to object to (a) the trial court's procedure for handling the *Batson*[1] violation, (b) prosecutorial misconduct, and (c) an erroneous jury instruction. Petitioner claimed that appellate counsel was ineffective for failing to raise a claim about trial counsel's ineffectiveness. In his prosecutorial-misconduct claim, Petitioner alleged that the prosecutor deprived him of a fair trial by (a) informing the jury about prior proceedings, which allowed the case to proceed as far as it did, (b) misleading the jury on the elements of

---

[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

5

*Drain v. Woods*, No. 10-11306

premeditation and deliberation, (c) eliciting evidence to bolster the prosecution's main witness, and (d) using inadmissible hearsay in her argument to the jury.

The trial court held oral arguments on Petitioner's motion and then issued a lengthy written opinion granting the motion. The trial court held that trial counsel was ineffective for failing to object to the *Batson* violation, to the trial court's procedures under *Batson,* to the prosecutor's reference to prior proceedings, and to the prosecutor's use of Ms. Baker's prior consistent statements. The trial court also held that the prosecutor deprived Petitioner of due process by (1) referring to prior court proceedings and (2) eliciting and using Ms. Baker's prior consistent statements to bolster Baker's testimony.

The prosecution appealed the trial court's decision to the Michigan Court of Appeals. Two of the three judges on the appellate panel reversed the trial court's decision. *See People v. Drain*, No. 275327, 2009 WL 127663 (Mich. Ct. App. Jan. 20, 2009). Judge Elizabeth L. Gleicher filed a dissenting opinion in which she opined that the trial court did not abuse its discretion when it granted Petitioner's motion for relief from judgment. That dissent contained a comprehensive analysis of the *Batson* error.

Petitioner appealed the Court of Appeals decision. On January 22, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Drain*, 485 Mich. 1043 (2010) (table). The state supreme denied reconsideration on March 29, 2010.

6

*Drain v. Woods*, No. 10-11306

**C.  The Habeas Petition and Responsive Pleading**

On March 31, 2010, Petitioner filed his habeas corpus petition through counsel.  He claims that: (1) the prosecutor used peremptory challenges to exclude potential jurors on the basis of race; (2) the evidence was insufficient to support his murder conviction; (3) the trial court erred by failing to instruct the jury on the order of deliberations for lesser offenses; (4) the prosecution used false testimony at trial; (5) trial counsel was ineffective for (a) failing to present an alibi witness, (b) depriving him of his right to testify, and (c) failing to object to the trial court's jury instruction on inferring premeditation and deliberation; (6) he was denied his constitutional right to appeal his conviction by the state appellate courts' denial of his motion to remand for an evidentiary hearing on his claim of ineffective assistance of counsel; (7) trial counsel was ineffective for failing to object to prosecutorial misconduct and to the trial court's procedure for the *Batson* violation; and (8) the prosecutor committed misconduct.  Respondent argues in an answer to the petition that two of Petitioner's claims about trial counsel (failure to present an alibi witness and depriving Petitioner of his right to testify in his own behalf) are procedurally defaulted, because Petitioner failed to exhaust state remedies for the claims and no longer has an available remedy to exhaust.  Respondent asserts that the remainder of Petitioner's claims lack merit because the state court's adjudication of those claims was objectively reasonable.

## II.  STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

7

*Drain v. Woods*, No. 10-11306

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law, as
>          determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in the
>          State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

        A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id*. at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id*. at 411.

8

*Drain v. Woods*, No. 10-11306

### III.  DISCUSSION

**A.  The Prosecutor's Use of Peremptory Challenges;**
**Trial Counsel's Failure to Object**
(habeas claims one and seven)

Petitioner, who is an African American, alleges that he was denied equal protection of the law as set forth in *Batson*, when the prosecutor exercised peremptory challenges to exclude potential jurors on the basis of their race.  Petitioner further alleges that his trial attorney deprived him of effective assistance by failing to object to the trial court's manner of handling the *Batson* violation.  This Court finds the *Batson* error was preserved for review by the trial court's correct review procedure.  An objection to the unconstitutional result was implicit in the trial court's recognizing the problem.  Alternatively, if it were not implicit, then Petitioner was denied effective assistance of counsel.

#### 1.  Background

The trial court *sua sponte* challenged the prosecutor's use of peremptory challenges during *voir dire* by noting that the prosecutor had used seven of nine peremptory challenges to eliminate prospective jurors who were African Americans.  After the prosecutor voluntarily offered reasons for her strikes, the trial court concluded that the prosecutor had consistently excluded African Americans on the basis of their race.  Rather than recalling the African Americans whom the prosecutor eliminated or dismissing the entire jury venire, the trial court proceeded with *voir dire* and instructed the prosecutor to seek permission before striking any additional jurors.  The prosecutor then successfully challenged an African American juror for cause, and *voir dire* concluded.  The trial continued with thirteen jurors, one alternate.

9

*Drain v. Woods*, No. 10-11306

The Michigan Court of Appeals concluded on direct appeal that Petitioner waived the *Batson* error and thereby extinguished the issue by failing to raise the issue at trial and by remaining silent as the trial court proceeded with jury selection with the only remedy being that the prosecutor would be required to give a reason for excusing any additional African Americans. The Michigan Supreme Court denied leave to appeal without any discussion of the issue.

In his subsequent motion for relief from judgment, Petitioner styled his claim as one of ineffective assistance of trial counsel. He claimed that trial counsel was ineffective for failing to object to the trial court's manner of handling the issue. The trial court admitted in its order addressing Petitioner's motion that it had used an improper remedy for the *Batson* problem and that Petitioner was entitled to relief from judgment. The prosecutor, however, appealed the trial court's decision to the Michigan Court of Appeals, which reversed the trial court's decision, stating that no *Batson* error occurred and, therefore, trial counsel was not ineffective for failing to object one judge dissenting. The Michigan Supreme Court denied Petitioner's subsequent application for leave to appeal.

## 2. The State's Waiver of any Procedural Default Argument

Despite the state appellate court's conclusion on direct appeal that Petitioner waived appellate review of his *Batson* claim, Respondent does not argue that the *Batson* claim is procedurally defaulted. Nor does he argue that Petitioner's related claim about trial counsel is procedurally defaulted even though, on collateral review, the Michigan Court of Appeals defined the issue as "whether defendant's claim of ineffective assistance of counsel established good

10

*Drain v. Woods*, No. 10-11306

cause and actual prejudice to preclude the application of [Michigan Court Rule] 6.508(D)(3) to bar his claims." *Drain*, 2009 WL 127663, at *1. In fact, Respondent contends that the state appellate courts decided Petitioner's *Batson* and ineffectiveness claims on the merits. *See* Answer in Opp'n to Pet. for Writ of Habeas Corpus, at 21.

To the extent Petitioner's *Batson* claim and the related ineffective-assistance-of-counsel claim may be procedurally defaulted, the Court is not required to raise the issue *sua sponte*. *See Trest v. Cain*, 522 U.S. 87, 89 (1997) (stating that "a court of appeals is not 'required' to raise the issue of procedural default sua sponte"); *see also Flood v. Phillips*, 90 F. App'x 108, 114 (6th Cir. 2004) (explaining that the State was required to assert procedural default as an affirmative defense in its responsive pleading and that it waived the defense when it failed to do so). The Court therefore will proceed to address Petitioner's first and seventh claims on the merits.

### 3. The Prosecutor's Use of Peremptory Challenges

#### a. Clearly Established Federal Law

Under *Batson*, "and later decisions building upon *Batson*, parties are constitutionally prohibited from exercising peremptory challenges to exclude jurors on the basis of race, ethnicity, or sex." *Rivera v. Illinois*, 556 U.S. 148, 152 (2009).

> *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race:
>
> > " 'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in

*Drain v. Woods*, No. 10-11306

> light of the parties' submissions, the trial court must determine
> whether the defendant has shown purposeful discrimination.' "

*Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008) (alterations in original) (end citations omitted).

A person can satisfy step one and establish "a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 93-94. "[T]he party challenging the peremptory strike must demonstrate that: (1) he is a member of a cognizable racial group; (2) a peremptory challenge was employed to remove a juror of the defendant's race; and (3) these facts, along with other relevant circumstances, raise an inference that the proponent of the peremptory challenge used the challenge to exclude a prospective juror because of his or her race." *United States v. Mc Allister*, __ F.3d __, __, No. 11-5932, 2012 WL 3854791, at *4 (6th Cir. Sept. 6, 2012). A "defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson*, 476 U.S. at 96 (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)).

### b. Application

#### i. Step One

Trial counsel for Petitioner did not make a *Batson* objection during trial. It was the trial court that *sua sponte* raised the issue by pointing out that the prosecutor had excused nine prospective jurors, seven of whom were African Americans. Before the trial court ruled on whether a prima facie case had been established, the prosecutor offered to explain the reasons for

12

*Drain v. Woods*, No. 10-11306

her peremptory challenges.  After she provided her reasons for excusing African Americans, the trial court ruled that the prosecutor consistently excluded black jurors on the basis of their race. The Michigan Court of Appeals majority nevertheless concluded that "a prima facie showing of purposeful discrimination was dubious at best."  *Drain*, 2009 WL 127663, at *2.

Once a prosecutor offers explanations for her peremptory challenges and the trial court rules on the ultimate question of discriminatory intent, the preliminary issue of whether there was a prima facie showing of discrimination becomes moot.  *Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Therefore, the trial court's failure to rule on whether Petitioner made a prima facie showing of intentional discrimination need not concern the Court, *id.*  The Michigan Court of Appeals acted unreasonably when it rested its holding in part on an issue that had become moot.  *Lancaster v. Adams*, 324 F.3d 423, 435 (6th Cir. 2003).

Even if step one were not a moot issue, it is clear from the record that a *prima facie* case was established.  As an African American, Petitioner is a member of a cognizable racial group. *Gray v. Brady*, 592 F.3d 296, 305 n.5 (1st Cir.), *cert. denied*, __ U.S. __, 130 S. Ct. 3478 (2010). The prosecutor used seven of nine peremptory challenges to remove members of Petitioner's race from the jury panel.  As explained by state appellate Judge Gleicher in her dissenting opinion, "the prosecutor exercised 78 percent of her peremptory challenges to exclude minorities, despite the fact that minorities composed only 28 percent of the venire at its inception, and 31 percent at its conclusion."  *Drain*, 2009 WL 127663, at *14.  This pattern of strikes against African Americans gave rise to an inference that the prosecutor used her peremptory challenges to exclude prospective jurors because of their race.  *Batson*, 476 U.S. at

13

*Drain v. Woods*, No. 10-11306

97.  Although the prosecutor denied excluding African American jurors on the basis of their race (Tr. June 12, 2002, at 190), the denial of an impermissible motive and an assertion of good faith does not satisfy the prosecution's burden in responding to a prima facie case of purposeful discrimination.  *United States v. Hill,* 146 F.3d 337, 341 (6th Cir. 1998).

The state appellate court's conclusion "that a prima facie showing of purposeful discrimination was dubious at best," *Drain*, 2009 WL 127663, at *2, was based on the fact that the prosecutor excused two Caucasian prospective jurors and failed to remove all African Americans from the jury.[2]  The State Court of Appeals concluded that this was strong evidence against a showing of discrimination.

In *Batson*, however, the Supreme Court stated that "'[a] single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.'"  *Batson*, 476 U.S. at 95 (quoting *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 n.14 (1977)).  In other words, the failure to exclude one member of a protected class does not insulate the unlawful exclusion of others.  *United States v. Harris*, 192 F.3d 580, 587 n.1 (6th Cir. 1999).  The decision of the Michigan Court of Appeals was contrary to clearly established Supreme Court precedent and was unreasonable.

---

[2]  Apparently, four African Americans remained on the panel and served on Petitioner's jury.

14

*Drain v. Woods*, No. 10-11306

### ii. *Batson* Step Two

Step two of the *Batson* analysis requires determining whether the prosecutor had  race-neutral explanations for eliminating the African American jurors.  "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.

The prosecutor did not provide any reason for its strike of George Scurry, who was an African American.  She gave the following reasons for excusing the other six African American prospective jurors through the use of peremptory strikes:  Carolyn Jeffers fell asleep during *voir dire*; Loretta James said something about not being able to view a police officer's or a drug user's testimony objectively[3]; Mary Dewberry indicated that she would not find a drug user to be credible; Leah Gutierriez was much younger than the other venirepersons; Johnie Trotter thought the prosecutor had to prove its case beyond a shadow of a doubt; and Maleea Standfield was young and did not think that a drug user could accurately relate things she had seen.  (Tr. June 12, 2002, at 186-89.)  The Michigan Court of Appeals correctly concluded that these reasons were race-neutral on their face.

### iii. *Batson* Step Three

"Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, '[t]he trial court then [has] the duty to determine if the defendant has established if the defendant has established purposeful discrimination."  *Hernandez*, 500 U.S. at 363 (quoting

---

[3]  The prosecution's main witness, Andria Baker, used illegal drugs.

15

*Drain v. Woods*, No. 10-11306

*Batson*, 476 U.S. at 98).  The critical question at this step "is the persuasiveness of the

prosecutor's justification for his peremptory strike."  *Miller-El v. Cockrell*, 537 U.S. 322, 338-39

(2003).  "[T]he trial court's decision on the ultimate question of discriminatory intent represents

a finding of fact of the sort accorded great deference on appeal," because

> the finding "largely will turn on evaluation of credibility." [*Batson*], 476 U.S., at
> 98, n.21, 106 S. Ct., at 1724, n.21.  In the typical peremptory challenge inquiry,
> the decisive question will be whether counsel's race-neutral explanation for a
> peremptory challenge should be believed.  There will seldom be much evidence
> bearing on that issue, and the best evidence often will be the demeanor of the
> attorney who exercises the challenge.  As with the state of mind of a juror,
> evaluation of the prosecutor's state of mind based on demeanor and credibility
> lies "peculiarly within a trial judge's province."  *Wainwright v. Witt*, 469 U.S.
> 412, 428, 105 S. Ct. 844, 854, 83 L. Ed.2d 841 (1985), citing *Patton v. Yount*, 467
> U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984).

*Hernandez*, 500 U.S. at 364-65.

> A prosecutor's motives may be revealed as pretextual where a given explanation
> is equally applicable to a juror of a different race who was not stricken by the
> exercise of a peremptory challenge.  *See Caldwell v. Maloney*, 159 F.3d 639, 651
> (1st Cir. 1998).  "A comparative analysis of jurors struck and those remaining is a
> well-established tool for exploring the possibility that facially race-neutral
> reasons are a pretext for discrimination."  *Turner v. Marshall*, 121 F.3d 1248,
> 1251 (9th Cir. 1997). Peremptory challenges cannot be lawfully exercised against
> potential jurors of one race unless potential jurors of another race with
> comparable characteristics are also challenged.  *See id*.

*McClain v. Prunty*, 217 F.3d 1209, 1220-21 (9th Cir. 2000)).

The Michigan Court of Appeals stated that, even if a prima facie case were shown, the

trial court erred by combining the second and third steps of the *Batson* inquiry into one step.

The Court of Appeals also stated that the trial court challenged the African American jurors

collectively instead of on a case-by-case basis and that the trial court's evaluation of the

prosecutor's explanations was unsupported by the record.  The Court of Appeals faulted the trial

*Drain v. Woods*, No. 10-11306

court for requiring the prosecutor to offer persuasive reasons for her peremptory challenges and for shifting the burden of proof to the prosecutor.    The reason for a strike need not be persuasive, nor even plausible. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).  And while it is also true that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike," *id.* at 768, the trial court did not shift the burden of proof to the prosecutor.  Instead, the trial court rejected the prosecutor's explanations for reasons supported by the record and implicitly found the prosecutor's explanations to be pretextual.

For example, the prosecutor eliminated Johnie Trotter because she thought that Ms. Trotter believed the prosecution had to prove its case beyond a shadow of a doubt.  Ms. Trotter did not say that (Tr. June 12, 2002, at 10-12, 17-18, 22), and even though the prosecutor had trouble remembering exactly what Ms. Trotter did say, the failure to recall the reason for a peremptory challenge does not satisfy the *Batson* requirement to articulate a neutral explanation related to the case being tried.  *Harrison v. Ryan*, 909 F.2d 84, 87 (3d Cir. 1990).

The prosecutor eliminated Ms. Gutierriez on the basis that she was much younger than the other jurors.  The prosecutor gave the "youth factor" as a reason for striking Ms. Standfield as well.   The trial court rejected this reason because the prosecutor did not eliminate Paul Reger, a college student (and apparently a Caucasian), who "obviously [was] the youngest juror" on the panel, according to the trial court.

The Michigan Court of Appeals correctly pointed out that Reger's age was not revealed on the record.  However, the trial court's factual finding regarding Reger's age is entitled to a presumption of correctness because Petitioner has not rebutted the presumption of correctness

17

*Drain v. Woods*, No. 10-11306

with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006).  The Michigan Court of Appeals did not defer sufficiently to the trial court's factual finding that Reger was the youngest prospective juror present.  And the fact that neither the prosecutor, nor defense counsel, questioned Ms. Gutierriez about any subject supports the conclusion that the prosecutor's explanation for excusing Gutierriez on the basis of her youth was pretextual.

Another example of the pretextual nature of the prosecutor's explanations was apparent in the elimination of Mary Dewberry, Loretta James, and Maleea Standfield.  The prosecutor stated that those jurors did not believe a drug user would be credible.  The trial court countered this assertion by stating that "half of the white jurors" on the panel had said the very same thing. The trial court then named Lois Egner, Lulu Richards, Susan Deneau, and Susanna Hallam as examples of people who said that drugs affect people's perceptions.

The Michigan Court of Appeals found fault with this finding because two of the jurors cited by the trial court said they would not dismiss a witness's testimony because the witness was a drug user, and the third juror was not asked about drug users.  The record supports the finding of the Michigan Court of Appeals on this matter.  Susan Deneau and Susanna Hallam were not asked about drug users, and both Lulu Richards and Lois Egner said that they would not automatically dismiss what a drug user said.  (Tr. June 11, 2002, at 39 (Richards); Tr. June 12, 2002, at 18 (Egner).)

Nevertheless, four other prospective Caucasian jurors (Kimberly Letourneau, Shirley Sharpe, Craig Schuler, and Donna Wright) expressed negative feelings about drug users, and the

18

*Drain v. Woods*, No. 10-11306

prosecutor did not dismiss them.[4]  Kimberly Letourneau initially stated that a person under the influence of drugs could be credible, but she went on to say that her addicted father's use of crack cocaine affected his ability to perceive and that she did not always believe her brother when he was "high" on marijuana.  (Tr. June 12, 2002, at about 77-79.)

Shirley Sharpe stated that she would not reject the testimony of a person with a history of drug use, but that the person's perceptions would depend on their condition at the time.  She also said that she would want assurance that the person was not under the influence at the relevant time before she would believe the witness's testimony.  (*Id*. at about 42-44.)  This was similar to Loretta James' comment that a drug user's ability to perceive an event would depend on the condition he or she was in at the time, because drug users were not necessarily "spaced out" all the time.  (Tr. June 11, 2001, at 40.)  Ms. Sharpe's comments were also similar to Ms. Dewberry's remark that a person should be able to make a rational judgment if he or she was not "high" at the time.  Ms. Dewberry also stated that a person who was purchasing heroin or cocaine at 2:30 a.m. was not necessarily "high" at the time.  (*Id*. at 76-77,80.)

Craig Schuler stated that drugs can affect a person's ability to perceive and that a person purchasing heroin probably used it.  (Tr. June 12, 2002, at 75-76.)  Donna Wright stated that she thought drugs affect a person's ability to perceive and that she would question the credibility of someone who was under the influence of drugs.  (*Id*. at 85.)

---

[4] Both Sharpe and Letourneau were eliminated by defense counsel, but Craig Schuler and Donna Wright served on Petitioner's jury.

*Drain v. Woods*, No. 10-11306

To summarize, African Americans and Caucasians expressed similar views on the credibility of a drug user's testimony. The prosecutor excused African Americans on that basis, but not Caucasians. The trial court implicitly found the prosecutor's explanations to be pretextual, and then concluded that the prosecutor systematically excluded African American venirepersons on the basis of race. The Michigan Court of Appeals unreasonably concluded that the trial court's evaluation of the prosecutor's race-neutral explanations was not supported by the record.

The Court of Appeals also unreasonably concluded that, "whenever two veniremen of different races provide the same responses and one is excused and the other is not," *Batson* is not violated. *Drain*, 2009 WL 127663, at *3 (quoting *Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir. 1997)). In *Miller-El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court stated that, "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Id*. at 241. Here, Caucasians made remarks about drug users similar to those given by African Americans, yet at least two African Americans (Loretta James and Mary Dewberry) were struck from the jury on that basis, whereas four Caucasians (Kimberly Letourneau, Shirley Sharpe, Craig Schuler, and Donna Wright) were permitted to remain on the panel. In addition, the prosecutor struck two minority prospective jurors (Leah Gutierriez and Maleea Standfield) on the basis of their youth, but she failed to strike Paul Reger, a Caucasian who apparently was the youngest person on the panel.

20

*Drain v. Woods*, No. 10-11306

"The Constitution forbids striking even a single prospective juror for a discriminatory purpose." *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994) (quoted with approval in *Snyder*, 552 U.S. at 478). This is true "'even where other black jurors are seated, and even when valid reasons for the striking of some black jurors are shown.'" *Eagle v. Linahan*, 279 F.3d 926, 942 (11th Cir. 2001) (quoting *United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986)); *see also Greer v. Mitchell*, 264 F.3d 663, 682 n.4 (6th Cir. 2001) ("simply because blacks are ultimately seated on a jury does not preclude a *Batson* challenge") (citing *Harris*, 192 F.3d at 587).

In conclusion, the state appellate court's ultimate conclusion that no *Batson* violation occurred was based on an unreasonable determination of the facts and resulted in an unreasonable application of *Batson* and progeny. And because *Batson* errors are structural errors, which are not subject to harmless error analysis, *Harris*, 192 F.3d at 588, automatic reversal of Petitioner's conviction is required. *Washington v. Recuenco*, 548 U.S. 212, 218 (2006); *Neder v. United States*, 527 U.S. 1, 8 (1999).

Structural errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Neder*, 527 U.S. at 8-9 (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). Thus, where an error is structural, "the error 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Recuenco*, 548 U.S. at 218-19 (quoting *Neder*, 527 U.S. at 9). Accordingly, the Court grants Petitioner a conditional writ of habeas corpus on his *Batson* claim.

21

*Drain v. Woods*, No. 10-11306

**4.  The Ineffective-Assistance-of-Counsel Claim**

In addition, in a related claim, Petitioner argues that his trial attorney was ineffective for failing to object to the trial court's handling of the *Batson* issue.  The trial court agreed.  The Michigan Court of Appeals resolved this issue by stating that, because no *Batson* violation occurred, the trial court erred in finding that Petitioner's trial attorney was ineffective.

**a.  Clearly Established Supreme Court Law**

The Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984), is clearly established federal law for purposes of evaluating a claim of ineffective assistance of counsel.  *Cullen v. Pinholster*, __ U.S. __, __, 131 S. Ct. 1388, 1403 (2011).  Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland,* 466 U.S. at 687.

"[T]he proper standard for attorney performance is that of reasonably effective assistance. . . .  [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 687-88.  To demonstrate that counsel's performance prejudiced the defense, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770,  792 (2011) (quoting *Strickland*, 466 U.S. at 693).

22

*Drain v. Woods*, No. 10-11306

### b. Application

Petitioner's trial attorney did not object to the prosecutor's use of peremptory challenges to eliminate African Americans from the jury panel, despite the fact that the prosecutor did not strike Caucasians who held similar views.  In fact, trial counsel remained silent during the trial court's discussion of the issue with the prosecutor.  One could argue that there was no need to object, because the trial court raised the issue *sua sponte* and found that the prosecutor consistently excluded African Americans on the basis of race.  Nevertheless, a *Batson* error is a structural error.  *Harris*, 192 F.3d at 588.

Counsel's passivity in light of an obvious pattern of strikes against minority prospective jurors fell below an objective standard of reasonableness and amounted to deficient performance. *See Richardson v. Hardy,* __ F. Supp.2d __, __, 2012 WL 850732, *12 n.3 (N.D. Ill. Mar. 13, 2012) (explaining that "appellate counsel's failure to assert the [*Batson*] issue on appeal—as a substantive *Batson* claim or at least as a claim of ineffective assistance of trial counsel for failure to object at trial—unquestionably fell below a standard of objective reasonableness").

The remaining question is whether trial counsel's deficient performance prejudiced the defense.  The most obvious evidence that counsel's performance prejudiced Petitioner's defense is the fact that the Michigan Court of Appeals concluded on direct appeal that Petitioner forfeited appellate review of his *Batson* claim by not objecting at trial.

At the trial court level, the failure to object resulted in the trial court applying an incorrect solution to the problem.  It allowed the trial to proceed with a jury drawn by discriminatory means.

23

*Drain v. Woods*, No. 10-11306

The proper remedy for a *Batson* error is "to discharge the venire and select a new jury from a panel not previously associated with the case, or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Batson*, 476 U.S. at 99 n.24 (internal and end citations omitted). It is apparent from the record in this case that the trial court did not know the proper remedy for a *Batson* error. This is obvious from the transcript of the hearing on Petitioner's motion for relief from judgment. The trial court asked Petitioner's current attorney what the court should have done after it determined that the prosecutor improperly excluded African Americans from the jury. The court inquired whether it should "have just excused the whole jury and started all over again?" Petitioner's attorney responded affirmatively and explained that it made no sense to proceed with the current jury once the court ruled that jurors had been improperly excluded. (Tr. Sept. 15, 2006, at 26-27.)

The trial court stated in its subsequent written order on Petitioner's post-judgment motion that it had proposed an insufficient remedy to cure the constitutional error. This admission and the trial court's question at the hearing leads this Court to conclude that the result of the proceeding likely would have been different if trial counsel had objected to the prosecutor's discriminatory use of peremptory challenges and pointed out the correct remedy for the problem. But for counsel's failure to object to the *Batson* error and failure to suggest the proper remedy, there is a substantial probability that the trial court would have followed the proper procedures and ordered a new panel of jurors not previously associated with the case. Since *Batson* violation is a structural error, no further prejudice is required to be shown. These probabilities are sufficient to undermine confidence in the outcome of the trial.

24

*Drain v. Woods*, No. 10-11306

In conclusion, trial counsel's failure to object at trial to the *Batson* violation and to the trial court's remedy constituted deficient performance, and the deficient performance prejudiced the defense. The state appellate court's conclusion that trial counsel was not ineffective was objectively unreasonable and contrary to *Strickland*. Accordingly, the Court grants a conditional writ of habeas corpus on Petitioner's claim about trial counsel's failure to object to the *Batson* error and to the trial court's remedy for the error.

**B.     Sufficiency of the Evidence**
(habeas claim two)

Petitioner alleges next that he was denied due process of law because there was insufficient evidence to sustain his conviction for first-degree murder. Specifically, Petitioner contends that there was no evidence of premeditation and deliberation. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals adjudicated the claim on the merits and concluded that the evidence was sufficient to sustain the premeditation and deliberation elements of first-degree murder.

**1.   Legal Framework**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Following *Winship*, the relevant question on review of the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "*Jackson* claims face a high bar in federal habeas proceedings

25

*Drain v. Woods*, No. 10-11306

because they are subject to two layers of judicial deference in federal habeas corpus

proceedings." *Coleman v. Johnson*, __ U.S. __, __, 132 S. Ct. 2060, 2062 (2012) (*per curiam*).

A reviewing court must defer to the jury's verdict and to the state court's decision. *Id*; *Nali v.

Phillips*, 681 F.3d 837, 841 (6th Cir. 2012), *petition for cert. filed*, No. 12-5974 (U.S. Aug. 22,

2012).

Courts must apply the *Jackson* standard "with explicit reference to the substantive

elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n.16. In

Michigan, the elements of premeditated murder are (1) the defendant killed the victim and (2)

the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142,

151 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)).

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the

major facets of a choice or problem." *People v. Morrin*, 31 Mich. App. 301, 329 (1971) (internal

and end footnotes omitted).  "While the minimum time necessary to exercise this process is

incapable of exact determination, the interval between initial thought and ultimate action should

be long enough to afford a reasonable man time to subject the nature of his response to a 'second

look.'" *Id*. at 330.  "A pause between the initial homicidal intent and the ultimate act may, in the

appropriate circumstances, be sufficient for premeditation and deliberation." *People v.

Plummer*, 229 Mich. App. 293, 301 (1998) (citing *People v. Tilley*,  405 Mich. 38, 45 (1979)).

"'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not

remove every reasonable hypothesis except that of guilt.'" *United States v. Barnett*, 398 F.3d

516, 522 (6th Cir. 2005) (quoting *United States v. Spearman*, 186 F.3d 743, 745 (6th Cir. 1999)).

*Drain v. Woods*, No. 10-11306

### 2. Application

The Michigan Court of Appeals summarized the evidence adduced at trial as follows:

> [T]he victim was seated in a car that was parked along a street with the engine running. The victim told a pedestrian, Andria Baker, that she was waiting for defendant. Baker observed defendant approaching the victim's car. Baker subsequently heard a gunshot and saw sparks coming from a gun that defendant was firing into the car where the victim sat. The victim sustained three gunshot wounds to her head and upper body, one of which entered her back, passed through her lung, and lodged in her heart, causing her death. There was no evidence that the victim was armed or that the shooting was provoked by an action of the victim. After the shooting, defendant saw Baker fleeing from the scene and, before departing, he took the time to let Baker know that he saw her and could identify her.

*Drain*, 2004 WL 1459414, at *3.

Petitioner does not dispute the fact that he shot and killed Ms. Jones. The only question is whether he premeditated and deliberated the killing. Premeditation and deliberation may be inferred from the circumstances of the killing and may be established through evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992) (citing *People v. Johnson*, 93 Mich. App. 667, 675 (1979); *People v. Gonzalez*, 178 Mich. App. 526, 533 (1989)).

Petitioner apparently knew Angela Jones because Ms. Jones informed Andria Baker that she (Jones) was waiting for Petitioner. Although the nature of Petitioner's relationship to Ms. Jones is unclear from the record, Andria Baker informed Investigator James Fisher that Petitioner had a reason for shooting Jones. (Tr. June 13, 2002, at 172-73.)[5] This evidence tends

---

[5] The reason or motive is not specified in the record.

27

*Drain v. Woods*, No. 10-11306

to support the conclusion that the shooting was premeditated and deliberate. *See People v. Youngblood*, 165 Mich. App. 381, 387 (1988) ("Premeditation and deliberation may be inferred from the facts and circumstances surrounding the killing, including: motive, as the result of a prior relationship between the parties . . . .").

As for Petitioner's conduct before the shooting, Ms. Baker saw him walking toward her and Ms. Jones and shortly afterward fire a gun into Ms. Jones' car. The jury could have inferred from this evidence that Petitioner brought a loaded gun to his meeting with Ms. Jones. The fact that Petitioner brought a loaded gun to the location and then "'used it to kill an unarmed victim reasonably suggests that [he] considered the possibility of murder in advance.'" *Romo v. Harrington*, No. 08-04602, 2009 WL 2817808, at *9 (C.D. Cal. Aug. 3, 2009) (quoting *People v. Adcox*, 47 Cal.3d 207, 240 (1988)), Report and Recommendation adopted by *Romo v. Harrington*, No. 08-04602, 2009 WL 2857040 (C.D. Cal. Sept. 1, 2009) (unpublished).

The circumstances of the killing also support a finding of premeditation and deliberation. As noted, Petitioner had a reason or motive for shooting Ms. Jones. In addition, he shot Ms. Jones three times in critical areas of her body, once in the head and twice in the upper left back. There was no evidence that Ms. Jones was armed, and although the use of a lethal weapon by itself is insufficient to show premeditation, "the killing of an unarmed victim 'is sufficient when coupled with the use of a firearm to establish beyond a reasonable doubt a premeditated intention to kill.'" *People v. Hubbard*, Nos. 263127 and 263361, 2007 WL 601603, at *15 (Mich. Ct. App. Feb. 27, 2007) (unpublished) (quoting *People v. Jones*, 115 Mich. App. 543, 553 (1982) (citing *People v. Vinunzo*, 212 Mich. 472, 475 (1920)). And the estimated fifteen yards between the

28

*Drain v. Woods*, No. 10-11306

victim's car and where Ms. Baker first saw Petitioner afforded Petitioner ample opportunity to deliberate and take a "second look" at what he was doing.

Finally, Petitioner's conduct after the homicide suggests premeditation and deliberation. He let Andria Baker know that he had seen her at the crime scene (Tr. June 13, 2002, at 12-13), and he subsequently let her know that he was not worried about anybody informing the police about him because he did not mind "laying a bitch down."[6] (*Id.* at 13-15.)  The jury could have inferred from this comment that Petitioner was willing to shoot Ms. Baker to prevent her from telling the police what she saw and that, if Petitioner were willing to kill Ms. Baker for reporting him to the police, he could have  contemplated and planned the shooting of Ms. Jones.

To summarize, Petitioner's actions before and after the killing, as well as the circumstances of the killing itself, support a finding of premeditation and deliberation.  Although it is a close issue, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, __ U.S. __, __, 132 S. Ct. 2, 4 (2011) (*per curiam*).  A rational trier of fact in this case could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner premeditated and deliberated the murder.          For the reasons given above, the state appellate court's conclusion – that the evidence was sufficient to support the jury's verdict – was not unreasonable.  Petitioner therefore has no right to relief on the basis of his second claim.

---

[6] There was additional evidence that Petitioner's girlfriend made a threatening call to Andria Baker after Baker testified at the preliminary examination.  (Tr. June 13, 2002, at 55-57.)

*Drain v. Woods*, No. 10-11306

**C.     The Jury Instructions**
(habeas claim three)

Petitioner alleges that he was deprived of a fair trial when the trial court failed to instruct the jury on the proper order of deliberations for first- and second-degree murder.  According to Petitioner, the trial court should have instructed the jurors that, if they believed Petitioner was not guilty of first-degree murder *or* if they could not agree on that crime, they should consider the less serious offense of second-degree murder.  Petitioner maintains that the trial court's failure to give the mandatory instruction on the proper order of deliberations deprived the jury of its ability to give fair consideration to second-degree murder.  According to Petitioner, the jurors could have incorrectly concluded that they had to acquit him of first-degree murder before they considered second-degree murder.

The Michigan Court of Appeals determined that Petitioner waived review of this claim by responding negatively when the trial court asked whether there were any objections to the court's instructions.  Petitioner consequently argues in the alternative that his trial attorney's failure to object to the lack of a jury instruction on the order of deliberations constituted ineffective assistance.  The Michigan Court of Appeals, however, stated that the trial court's instructions as a whole did not require the jury to acquit Petitioner of first-degree murder before considering second-degree murder and, therefore, Petitioner was not prejudiced by counsel's failure to object.      Although Petitioner couches his claim in constitutional terms, the essence of his claim is that the trial court failed to give a mandatory jury instruction under state law.  *See*

30

*Drain v. Woods*, No. 10-11306

*People v. Handley,* 415 Mich. 356 (1982).[7]  "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)).  On habeas corpus review of jury instructions, the question is whether the instruction violated some right guaranteed the defendant by the Fourteenth Amendment or infected the entire trial to the extent that the resulting conviction violates due process.  *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). "Petitioner must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair."  *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *McGuire*, 502 U.S. at 72).

Pursuant to *Handley*, the trial court should have informed the jurors that, if they failed to convict or acquit Petitioner on first-degree murder or were unable to agree on that charge, they

---

[7]  In *Handley*, the Michigan Supreme Court held that

a jury . . . must be told to consider the principal charge first.  It should then be instructed that if it fails to convict or acquit *or is unable to agree* whether to convict or acquit on that offense, it may then turn to lesser offenses.  The correct instruction would be that after the jury has given consideration to the greater offense, it may turn to lesser offenses *either* if it finds the defendant not guilty of the greater offense *or* if it is unable to agree on whether the defendant is guilty or not guilty of the greater offense.  The judge may add that it is for the jury to decide how long to spend considering the greater offense before turning to a consideration of lesser offenses or, stated differently, it is for the jury to decide whether, having failed to reach an agreement on guilt or innocence on a greater offense, to spend more time in an attempt to reach unanimous agreement on the greater offense or whether the time has come to turn to lesser offenses.  The judge may also add that of course the jury will not turn to lesser offenses if it finds the defendant guilty of the greater offense.

*Id*. at 361 (emphasis in original).

31

*Drain v. Woods*, No. 10-11306

could consider second-degree murder.  The court did say, "You may also consider the lesser crime of second-degree murder," (Tr. June 17, 2002, at 97), and the jury instructions did not condition the jury's right to consider second-degree murder on a finding that Petitioner was not guilty of first-degree murder.  Consequently, the jury instructions did not render Petitioner's trial fundamentally unfair, and trial counsel was not ineffective for failing to object to the instructions as given.  Petitioner has no right to habeas relief on the basis of his third claim.

**D.    Allegedly False Testimony**
(habeas claim four)

Petitioner alleges that, after his trial, Andria Baker had a taped conversation with his mother.  According to Petitioner, Ms. Baker stated during that conversation that she lied at trial when she testified that she saw Petitioner shoot the victim and that she lied because Investigator Fisher pressured her to do so.  Petitioner claims that he was denied due process of law by the prosecution's use of Andria Baker's false trial testimony.    Petitioner raised this issue in a motion for new trial.  The trial court denied his motion, and the Michigan Court of Appeals affirmed the trial court's ruling on the motion.  Petitioner contends that the state courts' denial of his request to present the taped conversation to a jury at a new trial violated his right of confrontation and his right to present a defense.

**1.  Clearly Established Federal Law**

Prosecutors may not deliberately deceive a court by knowingly presenting false evidence or by allowing false testimony to go uncorrected.  *Giglio v. United States*, 405 U.S. 150, 153 (1972).  But to prevail on a claim that the prosecutor used false testimony, a habeas petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the

32

2:10-cv-11306-AJT-RSW   Doc # 12   Filed 11/02/12   Pg 33 of 47   Pg ID 1819

*Drain v. Woods*, No. 10-11306

prosecutor knew the testimony was false. *Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012)

(citing *Brooks v. Tenn.*, 626 F.3d 878, 894-95 (6th Cir. 2010)); *Coe v. Bell*, 161 F.3d 320, 343

(6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). Mere

inconsistencies do not establish perjury. *Lochmondy*, 890 F.2d at 822 (citing *United States v.

Griley*, 814 F.2d 967, 971 (4th Cir. 1987)). Nor does the fact that a witness contradicts herself or

changes her story establish perjury. *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993) (citing

*Tapia v. Tansy*, 926 F.2d 1554, 1563 (10th Cir. 1991)).

### 2. Application

Andria Baker testified at Petitioner's trial that she saw Petitioner firing a gun into the

victim's car on December 4, 2001. At the subsequent hearing on Petitioner's motion for new

trial, Ms. Baker acknowledged that she conversed with  Annie Drain at Ms. Drain's home on

July 8, 2002, and Ms. Drain testified that she taped their conversation.      Ms. Baker admitted at

the hearing that she told Ms. Drain there was something wrong with Detective James Fisher, but

she denied that it was her voice on a purported tape of their conversation. Defense counsel

subsequently asked Ms. Baker a series of questions regarding her conversation with Ms. Drain.

She asked whether Ms. Baker had told Ms. Drain that Officer Fisher was crooked, that Fisher

made her say things, that half of what she said was perjury, and that she did not see Petitioner

shoot anybody or pull the trigger. In response to each question, Ms. Baker invoked her Fifth

Amendment right to remain silent. (Tr. Aug. 14, 2002, at 5-12.)

The victim's mother, Linda Goree, testified for the prosecution at the hearing. She stated

that, before Ms. Baker testified at Petitioner's trial, two male spectators saw her and Ms. Baker

*Drain v. Woods*, No. 10-11306

in the hallway and said, "We'll just wait until this trial is all over with and then we'll fuck her

up." According to Ms. Goree, Ms. Baker looked terrified when she heard this remark. (*Id.* at

37-42.)

At the close of the hearing, defense counsel summarized a transcript of the tape recording

as follows:

> [O]n page five, she [Ms. Baker] indicates that . . . Officer Fisher, the homicide
> officer in charge, has a personal thing against [Petitioner]. She stated in page five
> half the staff he made her say at trial. She even further indicated on page six that
> the testimony was perjury, half of that was perjury. He did all kinds of stuff to
> me. Then pivotal, she indicates that she saw [Petitioner] but I ain't seen him pull
> the trigger.

(*Id.* at 51.)[8] Defense counsel argued to the trial court that Ms. Baker's recanting statement on the

tape recording was newly discovered evidence, which entitled Petitioner to a new trial.

The trial court denied Petitioner's motion for new trial on the basis that Ms. Baker's

testimony at the hearing on Petitioner's motion was not newly discovered evidence, because it

had always been Petitioner's position that Ms. Baker was not being truthful. The trial court also

noted that Ms. Baker had not recanted her testimony under oath. (Tr. Aug. 28, 2002, at 5-6.)

The Michigan Court of Appeals ruled on direct appeal that the trial court analyzed Petitioner's

motion under the appropriate standards and did not abuse its discretion by denying Petitioner's

motion.

This Court finds no merit in Petitioner's claim because he has not demonstrated that Ms.

Baker perjured herself at trial. She has not submitted a recanting affidavit, she did not recant her

---

[8] Petitioner has not submitted a transcript of the tape-recorded conversation.

34

*Drain v. Woods*, No. 10-11306

trial testimony at the hearing on Petitioner's motion for new trial, and she claimed that it was not her voice on the tape-recorded conversation with Ms. Drain.   The record indicates that Ms. Baker was a reluctant witness at trial, not that she lied.

Even if the tape-recorded conversation were viewed as a recantation of Ms. Baker's trial testimony, Petitioner has failed to show that the prosecution knew Ms. Baker's trial testimony was false.  The Court therefore declines to grant habeas relief on Petitioner's claim that the prosecution convicted him on the basis of materially false testimony.

**E.     Trial Counsel**
    (habeas claim five)

Petitioner alleges that he was denied effective assistance of counsel when his trial attorney (1) failed to present an alibi witness that established his innocence, (2) advised him not to testify in his own behalf, and (3) failed to object to the trial court's erroneous and misleading jury instruction on inferring premeditation and deliberation.  Petitioner did not raise his third subclaim about trial counsel in either the Michigan Court of Appeals or in the Michigan Supreme Court, and Respondent argues that Petitioner's first and second subclaims about trial counsel are procedurally defaulted because Petitioner raised those claims for the first time in a motion for reconsideration following the Michigan Court of Appeals decision on direct appeal.

**1.  Legal Framework**

The doctrine of exhaustion of state remedies requires state prisoners to present all their claims to the state court before raising the claims in a federal habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 845 (1999).  To properly exhaust state remedies, a petitioner must fairly present the legal and factual basis for each claim

35

*Drain v. Woods*, No. 10-11306

to the state court of appeals and to the state supreme court before raising the claims in federal

court. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).

> If a prisoner failed to exhaust his or her state court remedies and state law would
> no longer permit the petitioner to raise the claim when he or she files a petition
> for habeas relief in federal court, the claim is procedurally defaulted . . . .
>
>      A petitioner may overcome a state's procedural default defense by
> showing "cause" and "prejudice" for his or her failure to comply with the state's
> procedural rule. *See Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007).

*Carter v. Mitchell*, __ F.3d __, __, No. 06-4238, 2012 WL 3854787, at *6-7 (6th Cir. Sept. 6,

2012).

### 2. Application

Petitioner contends that he raised his first two subclaims about trial counsel in a *pro se*

supplemental brief, which he filed in the Michigan Court of Appeals.  The state court's docket,

however, does not reflect a *pro se* supplemental brief, and the Michigan Court of Appeals did not

address the supplemental claims in its decision.  Further, the record before the Court does not

include a *pro se* supplemental brief.  Rather, the record indicates that Petitioner raised his first

two subclaims about trial counsel in a motion for reconsideration, which he filed after the

Michigan Court of Appeals affirmed his convictions on direct appeal.  He also raised those

claims in a subsequent application for leave to appeal in the Michigan Supreme Court.

Issues raised for the first time in a motion for reconsideration on appeal are not properly

exhausted, *Alcorn v. Smith*, 724 F.2d 37, 40 (6th Cir. 1983), *vacated on other grounds*, 471 U.S.

1096 (1985), and the submission of a new claim to a State's highest court on discretionary

review does not satisfy the exhaustion requirement.  *Castille v. Peoples*, 489 U.S. 346, 351

36

*Drain v. Woods*, No. 10-11306

(1989). The Court therefore concludes that Petitioner's first two subclaims about trial counsel are unexhausted. Petitioner's third subclaim about trial counsel also is unexhausted, because Petitioner did not raise that claim in either the Michigan Court of Appeals or in the Michigan Supreme Court.

A criminal defendant who wishes to challenge his or her conviction following the direct appeal must file a motion for relief from judgment. *See* Subchapter 6.500 of the Michigan Court Rules. Generally, however, a prisoner may file only one motion for relief from judgment, Mich. Ct. R. 6.502(G)(1), and exceptions to this rule exist only for motions based on a retroactive change in the law or on a claim of newly discovered evidence. Mich. Ct. R. 6.502(G)(2). Petitioner has already filed one motion for relief from judgment, and his claims about trial counsel are not based on a retroactive change in the law or on newly discovered evidence. Consequently, his claims do not fall within either of the exceptions to Rule 6.502(G)(2), and he no longer has a state remedy to exhaust. His unexhausted claims must be deemed procedurally defaulted.

Petitioner alleges in his reply brief that appellate counsel was "cause" for his failure to raise his claims about trial counsel on direct appeal. This argument is itself procedurally defaulted because Petitioner did not raise the issue of appellate counsel's ineffectiveness as an independent claim in the State's appellate courts. Thus, appellate counsel cannot be deemed "cause" for Petitioner's procedural default, *Edwards v. Carpenter*, 529 U.S. 446, 450-53 (2000), and the Court need not determine whether Petitioner was prejudiced by the alleged constitutional

37

*Drain v. Woods*, No. 10-11306

errors. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 605 (2010).

The remaining issue whether the Court's failure to review Petitioner's claims about trial counsel on the merits will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The miscarriage-of-justice exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Thus, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate actual innocence, however, Petitioner must show that, in light of some new evidence, no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

As explained above, Petitioner purports to have new evidence that Andria Baker, the only witness to identify him as the shooter, has recanted her testimony. But Ms. Baker did not recant her trial testimony at the hearing on Petitioner's motion for new trial. The Court therefore concludes that Petitioner has not produced any new and reliable evidence of actual innocence. A miscarriage of justice will not result from the Court's failure to address the substantive merits of Petitioner's fifth claim. The issues raised in that claim are procedurally defaulted.

38

*Drain v. Woods*, No. 10-11306

**F.  Denial of the Motion to Remand for an Evidentiary Hearing**
  (habeas claim six)

Petitioner alleges that he was denied due process of law and his constitutional right to

appeal his conviction when the state appellate courts denied his motion to remand for an

evidentiary hearing on his claim of ineffective assistance of trial counsel.  This claim lacks merit

because it is based solely on the Michigan Constitution, the Michigan Court Rules, and

Michigan case law.  "It is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

*McGuire*, 502 U.S. at 67-68.

Petitioner also claims that he is entitled to an evidentiary hearing in this Court, but this

Court's "review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits."  *Pinholster*, 131 S. Ct. at 1398.  Petitioner's claims about

trial counsel's failure to object to (1) the absence of a jury instruction on the order of

deliberations, (2) the prosecutor's conduct, and (3) the trial court's handling of the *Batson* issue

were adjudicated on the merits in state court.  The *Batson* claim is fully discussed *supra*.  A

hearing is not necessary here.  Therefore, this Court need not hold a hearing on those claims.

**G.     The Prosecutor**
  (habeas claim eight)

Petitioner alleges that he was denied due process of law and a fundamentally fair trial

when the prosecutor:  (1) informed the jury that there were prior proceedings that allowed the

case to proceed as far as it did; (2) misled the jury on the law regarding premeditation and

*Drain v. Woods*, No. 10-11306

deliberation; (3) improperly elicited evidence of Ms. Baker's prior statements to bolster Baker's

testimony; and (4) relied on Ms. Baker's prior consistent statements in her closing arguments to

obtain a conviction.  Petitioner also claims that the cumulative effect of the prosecutor's

misconduct deprived him of his right to a fair trial and that his trial attorney was ineffective for

failing to object to the prosecutor's misconduct.  The Michigan Court of Appeals held that there

was no prejudicial prosecutorial misconduct and that trial counsel was not ineffective for failing

to make a futile objection.

### 1.  Legal Framework

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487,

512 (6th Cir. 2003)).  To prevail on a prosecutorial-misconduct claim, a habeas petitioner must

demonstrate that the prosecutor's conduct infected his trial with such unfairness as to make the

resulting conviction a denial of due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

(1974).  The misconduct must have been "so egregious as to render the entire trial fundamentally

unfair."  *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979).  The Federal Court of

Appeals for the Sixth Circuit

> appl[ies] a "two-part test to determine whether the state court reasonably applied
> the federal standard in holding that prosecutorial misconduct did not render [the
> petitioner's] trial fundamentally unfair."  *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir.
> 2009).  [The Court] first determine[s] whether the prosecution's conduct was
> improper.  *Id*.  Second, [the Court] determine[s] whether that improper conduct
> was flagrant by considering four factors: "(1) whether the evidence against the
> defendant was strong; (2) whether the conduct of the prosecution tended to
> mislead the jury or prejudice the defendant; (3) whether the conduct or remarks
> were isolated or extensive; and (4) whether the remarks were made deliberately or
> accidentally."  *Id*. (internal quotation marks omitted).

40

*Drain v. Woods*, No. 10-11306

*Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012), *petition for cert. filed,* No. 12-5231 (U.S. July 10, 2012).

Claims of prosecutorial misconduct also are subject to harmless-error analysis. *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (citing *Hill v. Brigano*, 199 F.2d 833, 847 (6th Cir. 1999)). An error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2. The Reference to Prior Proceedings

Petitioner asserts that the prosecutor erred by informing prospective jurors during *voir dire* that there were prior proceedings which allowed the case to proceed as far as it did. The Michigan Court of Appeals explained the facts giving rise to this claim as follows:

> During voir dire, Chris Koka, one of the prospective jurors, indicated that he would not want someone like himself on a jury if he, himself, were charged with murder "[bec]ause of what [he saw during] 22 years of being a parole officer." Although Koka claimed he would have no problem presuming defendant innocent, he noted that in his job, "they're all innocent when they come to see me," and added he could not be fair in this case. After these statements, the following exchange ensued:
>
> *The prosecutor*: You realize that not everyone that's arrested is convicted, right?
>
> *Koka*: Correct.
>
> *The prosecutor*: And not everyone that's arrested is necessarily guilty, right?
>
> *Koka*: Correct.
>
> *The prosecutor*: Before they get to the point where they come to see you, there is a process they have to go through that involves a prosecutor like me somewhere, right?

*Drain v. Woods*, No. 10-11306

*Koka*:  Correct.

*The prosecutor*:  What we're trying to figure out is – and I think you have been real honest.  I don't want to kind of belabor it, but can you participate in this part of the – let me see I an phase-[sic].

*Koka*:  That in my mind would probably say if he went this far with the police reports and everything else, I tend to be guilty [sic].

　　　　* * *

*The court*:  I'm sorry to interrupt but let me ask this question.  You understand to get this far all you have to show is that there is a probability? I mean you don't have to show even a preponderance to get this far.  You understand that?

*Koka*: Uh-huh.

*Drain*, 2009 WL 127663, at *5.  Petitioner contends that the prosecutor subverted the presumption of innocence by suggesting that prosecutors must approve charges against a defendant in order for the case to have reached the trial stage.

　　　The trial court determined during post-conviction proceedings that the prosecutor's comments were improper because they inferred that the prosecutor's office had tested the case in prior proceedings and believed in the validity of the charges against Petitioner.  The court stated that such an inference destroys the defendant's right to be presumed innocent and reduces the prosecutor's burden of proof and that trial counsel's failure to object prejudiced Petitioner.  The Michigan Court of Appeals, however, ruled that the prosecutor's questions were proper and that trial counsel's failure to object did not constitute ineffective assistance.

　　　Even if the prosecutor's questions were improper, they were not flagrant.  The prosecutor pointed out that not everyone who is arrested is guilty, and the trial court explained that there had to be only a probability of guilt for a case to reach the trial stage.

42

*Drain v. Woods*, No. 10-11306

It bears repeating that the disputed remarks occurred during *voir dire*.  Mr. Koka

ultimately was excused for cause, and the trial court instructed the jurors at the beginning and

conclusion of the trial that Petitioner was presumed innocent and that the presumption of

innocence continued throughout the trial and entitled Petitioner to a verdict of not guilty unless

the jurors were satisfied beyond a reasonable doubt that Petitioner was not guilty.  (Tr. June 11,

2002, at 16-17; Tr. June 17, 2002, at 86).  The Court therefore concludes that the alleged

constitutional error could not have had a substantial and injurious effect or influence on the

jurors who deliberated Petitioner's case and was harmless.  Trial counsel was not ineffective for

failing to object to the harmless error.

### 3.  The Comments on Premeditation and Deliberation

Petitioner alleges that the prosecutor misled the jury by misstating the law on

premeditation and deliberation.  According to Petitioner, the prosecutor stated that premeditation

and deliberation could be established by a split-second decision.  The last state court to issue a

reasoned decision on this issue was the trial court, which found no merit in the claim.[9]

Once again, the disputed comments occurred during *voir dire*.  The prosecutor compared

the process of premeditation and deliberation to driving a car when one is late for work or an

important appointment and approaching an intersection where the traffic light has turned yellow.

---

[9] Petitioner did not raise this claim in the Michigan Court of Appeals or in the Michigan
Supreme Court.  Nevertheless, the issue lacks merit, and neither exhaustion, nor procedural
default, is a jurisdictional limitation.  *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert.
denied*, __ U.S. __, 130 S. Ct. 3274 (2010).  Consequently, the Court will adjudicate the issue on
the merits.

*Drain v. Woods*, No. 10-11306

She stated that "[p]remeditation can be very short like thinking about the decision whether to stop at the yellow [light]" and that thinking about the consequences of one's actions in that situation was deliberation or a weighing of the pros and cons. She concluded that premeditating and deliberating is not necessarily a long, drawn-out process. (Tr. June 11, 2002, at 45-47.)

The comment that premeditation and deliberation are not necessarily drawn-out processes is correct. As noted above, "[a] pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *Plummer*, 229 Mich. App. at 301. Furthermore, the trial court charged the jurors at the conclusion of the case to take the law as the court gave it to them. The court explained that "premeditated" meant "thought out beforehand" and that "deliberate" meant that "the defendant considered the pros and cons of the killing and thought about and chose his actions before he did it." (Tr. June 17, 2002, at 85, 96). The trial court continued:

> There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection.

(*Id*. at 96.) In light of the trial court's instructions on premeditation and deliberation, the prosecutor's comments on those concepts could not have a substantial or injurious effect or influence on the jury. Therefore, even if the prosecutor's comments were improper, the alleged error was harmless, and trial counsel was not ineffective for failing to object to the comments.

44

*Drain v. Woods*, No. 10-11306

### 4. Bolstering

Petitioner's final two claims about the prosecutor allege that the prosecutor improperly bolstered the testimony of Andria Baker, the prosecution's main witness, by eliciting Ms. Baker's prior consistent statements in the prosecutor's case in chief. Petitioner contends that the prosecutor exacerbated the error by mentioning Ms. Baker's prior consistent statements in her closing argument to bolster Ms. Baker's credibility.

Ms. Baker made prior statements about the crime to the police, to the prosecutor pursuant to an investigatory subpoena, and at the preliminary examination. She gave the same basic version of the facts all three times, except that she told the police and prosecutor that, at the time, she was on her way to a drug house where she intended to buy marijuana. At the preliminary examination and at Petitioner's trial, she admitted that she had intended to buy heroin, not marijuana, at the drug house and that she lied previously because she was ashamed to admit that she intended buy heroin. The prosecutor elicited evidence of Ms. Baker's prior consistent statements during her direct examination of Ms. Baker at trial, and she commented on Ms. Baker's consistent statements in her closing arguments.

The trial court concluded during post-conviction proceedings that the prosecutor's conduct was improper and prejudicial. The trial court stated that Ms. Baker's prior consistent statements were inadmissible hearsay under Michigan Rule of Evidence 801(d)(1)(B), because they did not predate a claim of recent fabrication, influence, or motive to lie. The trial court also ruled that trial counsel was ineffective for failing to object to the use of Ms. Baker's statement.

*Drain v. Woods*, No. 10-11306

The Michigan Court of Appeals likewise determined that the prosecutor's elicitation of Ms. Baker's prior consistent statements and the reference to the statements during closing arguments was improper.  The Court of Appeals, however, held that the error was harmless and that counsel's failure to object to the admission of the statements did not amount to ineffective assistance of counsel.

In a decision interpreting Federal Rule of Evidence 801(d)(1)(B), which is comparable to Michigan Rule of Evidence 801(d)(1)(B), the Supreme Court stated that, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited."  *Tome v. United States*, 513 U.S. 150, 157 (1995). This Court, however, has found no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution.   The Court concludes that the prosecutor's use of Ms. Baker's prior consistent statements did not deprive Petitioner of a fundamentally fair trial and that trial counsel's failure to object to the evidence did not amount to constitutionally ineffective assistance.

For all the reasons given above, the prosecutor's conduct was not so egregious as to deprive Petitioner of a fair trial.  And even though Petitioner claims that the cumulative effect of the alleged errors deprived him of a fair trial, this claim is not cognizable on habeas review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)), *cert. denied,* __ U.S. __, 132 S . Ct. 2751 (2012).  Consequently, the state appellate court's decision was not objectively unreasonable, and Petitioner is not entitled to habeas relief on the basis of his prosecutorial-misconduct claim.

46

## IV.  CONCLUSION

Habeas claims two through six and eight lack merit or are procedurally defaulted.  The Court denies relief on those claims.

Claims one and seven, on the other hand, warrant habeas relief, because Petitioner's constitutional right to equal protection of the law was violated by the prosecutor's discriminatory use of peremptory challenges to exclude members of Petitioner's race from the jury.  In addition, Petitioner's right to effective assistance of trial counsel was violated by trial counsel's failure to object to the *Batson* violation and to the trial court's handling of the *Batson* violation during *voir dire*.  The state appellate court's rejection of Petitioner's first and seventh claims was contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly, the writ of habeas corpus is conditionally granted as to habeas claims one and seven.  The State shall release Petitioner unless it takes steps to re-try him within ninety days of the date of this opinion and order.


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: November 2, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on November 2, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant

47